**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

FRAN R. FAULKNER,

        Plaintiff,

 v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

3:16-cv-00215-HDM-VPC

**REPORT AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE**

   This Report and Recommendation is made to the Honorable Howard D. McKibben, United States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.  Before the court is plaintiff's motion for reversal and/or remand (ECF No. 12) and defendant's cross-motion to affirm (ECF No. 16). Plaintiff did not file a reply.  For the reasons set forth herein, the court recommends that plaintiff's motion be granted, and defendant's cross-motion be denied.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

   On May 7, 2012, Fran Faulkner ("plaintiff") protectively filed for Social Security Disability Insurance ("SSDI") benefits under Title II of the Social Security Act, alleging a disability onset date of November 4, 2011.  (Administrative Record ("AR") 29, 195–98.)  The Social Security Administration denied plaintiff's application in the first instance on January 24, 2013, and upon reconsideration on October 8, 2013.  (*Id.* at 87–91, 95–100.)

   On April 6, 2015, plaintiff and her attorney appeared at a hearing before Administrative Law Judge ("ALJ") Eileen Burlison.  (*Id.* at 34–63.)  Carly Caughlin, a vocational expert ("VE"), also appeared at the hearing.  (*Id.*)  The ALJ issued a written decision on May 12, 2015, finding that plaintiff had not been disabled at any time between the alleged onset date and the date of the decision.  (*Id.* at 15–33.)  Plaintiff appealed, and the Appeals Council denied review on March 3,

1  2016.  (*Id.* at 1–7.)  Accordingly, the ALJ's decision became the final decision of the

2  Commissioner ("defendant").

3  Having exhausted all administrative remedies, plaintiff filed a complaint for judicial

4  review on April 21, 2016.  (ECF No. 1.)  In her motion for remand or reversal, plaintiff contends

5  that (1) the ALJ's residual functional capacity ("RFC") assessment lacked the support of

6  substantial evidence, and (2) the ALJ's credibility determination lacked the support of substantial

7  evidence.  (ECF No. 12.)

8  ## II.     STANDARD OF REVIEW

9  The initial burden of proof to establish disability in a claim for SSDI benefits rests upon

10  the claimant.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To satisfy this burden, the

11  claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of

12  any medically determinable physical or mental impairment which can be expected . . . to last for a

13  continuous period of not less than 12 months . . .."  42 U.S.C. § 423(d)(1)(A).

14  This court has jurisdiction to review an ALJ's decision to deny a claim for benefits after

15  the claimant has exhausted all administrative remedies.  *See Brewes v. Comm'r of Soc. Sec.*

16  *Admin.*, 682 F.3d 1157, 1161–62 (9th Cir. 2012).  The court must affirm the ALJ's decision

17  unless it rests on legal error or is unsupported by substantial evidence in the administrative

18  record.  *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014); *see also* 42 U.S.C. § 405(g)

19  ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial

20  evidence, shall be conclusive.").  The substantial evidence standard is not onerous.  It is "more

21  than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable

22  mind might accept as adequate to support a conclusion."  *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th

23  Cir. 2012) (internal quotation omitted).

24  Although the ALJ need not discuss every piece of evidence in the record, she cannot

25  ignore or omit evidence that is significant or probative.  *Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th

26  Cir. 2012).  The ALJ's discussion must adequately explain the decision in light of such evidence.

27  "The ALJ, not the district court, is required to provide specific reasons for rejecting [the

28  evidence.]"  *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (specifically

discussing rejection of lay testimony). The district court's review is thus constrained to the reasons asserted by the ALJ. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

To determine whether substantial evidence exists, the court must look at the record as a whole, considering both evidence that supports and undermines the ALJ's decision; it "may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (internal quotation omitted). Where "the evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (internal quotation omitted). The ALJ alone is responsible for determining credibility and resolving ambiguities. *Garrison*, 759 F.3d at 1010.

## III. DISCUSSION

### A. SSDI claims are evaluated under a five-step sequential process.

The Commissioner follows a five-step sequential process for determining whether a claimant is "disabled" for the purposes of SSDI. 20 C.F.R. § 404.1520(a)(4); *see also Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). Step one directs the ALJ to determine whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the Commissioner denies the claim. *Id.* § 404.1520(b).

The second step requires the ALJ to determine whether the claimant's medically determinable impairment is "severe." *Id.* § 404.1520(a)(4)(ii). "Severe" impairments are those that significantly limit the claimant's physical or mental ability to do basic work activities. *Id.* § 404.1520(c). The Commissioner will deny the claim if the claimant lacks a severe impairment or combination of impairments. *Id.*

At step three, the claimant's impairment is compared to those listed in the Social Security Regulations at 20 C.F.R. Pt. 404, Subpart P, Appendix 1. *Id.* § 404.1520(a)(4)(iii). The list in Appendix 1 "define[s] impairments that would prevent an adult, regardless of his [or her] age, education, or work experience, from performing *any* gainful activity, not just substantial gainful activity." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (internal quotation omitted) (emphasis in original). Where the claimant's impairment is on the list, or is equivalent to a listed impairment, and the claimant also meets the corresponding durational requirement, the claimant is deemed

1   disabled.  20 C.F.R. § 404.1520(d).  However, for an impairment to match a listing, "it must meet

2   *all* of the specified medical criteria.  An impairment that manifests only some of those criteria, no

3   matter how severely, does not qualify."  *Zebley*, 493 U.S. at 530 (emphasis in original).

4       If the Commissioner does not find disability at step three, review of the claim proceeds to

5   step four.  There, the ALJ considers whether the claimant can perform past relevant work despite

6   the severe impairment.  20 C.F.R. § 404.1520(a)(4)(iv).  If so, the claimant is not disabled.  *Id*. §

7   404.1520(e).  The ALJ will find that the claimant can return to past relevant work if he or she can

8   perform the "actual functional demands and job duties of a particular past relevant job" or the

9   "functional demands and job duties of the [past] occupation as generally required by employers

10  throughout the national economy."  *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001)

11  (internal quotation omitted).

12      In making the step four determination, the ALJ considers the claimant's RFC and the

13  physical and mental demands of the work previously performed.  20 C.F.R. § 404.1520(f); *see

14  also Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010).  The RFC is the most the claimant can

15  do despite his or her limitations.  20 C.F.R. § 404.1545(a)(1).  To determine the claimant's RFC,

16  the ALJ must assess all the evidence, including medical reports and descriptions by the claimant

17  and others of the claimant's relevant limitations.  *See id*. § 404.1545(a)(3).  The ALJ is not,

18  however, required to accept as true every allegation the claimant offers regarding his or her

19  limitations.  *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007).  The ALJ must follow a two-prong

20  inquiry where the claimant alleges subjective pain or symptoms.  *Lingenfelter v. Astrue*, 504 F.3d

21  1028, 1035–36 (9th Cir. 2007); *see also* SSR 96-7p, 61 Fed. Reg. 34483 (July 2, 1996).  First, the

22  ALJ determines "whether the claimant has presented objective medical evidence of an underlying

23  impairment which could reasonably be expected to produce the pain or other symptoms alleged."

24  *Lingenfelter*, 504 F.3d at 1036 (internal quotation omitted).  Second, if the first prong is met and

25  no evidence suggests that the claimant is a malingerer, the ALJ may reject the claimant's

26  allegations only by articulating "clear and convincing" reasons for doing so.  *Id*.

27      The "clear and convincing" standard is the most demanding standard in Social Security

28  case law, *Garrison*, 759 F.3d at 1015, and it requires the ALJ to "specifically identify the

4

testimony she or he finds not to be credible and [to] explain what evidence undermines the testimony," *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).  The ALJ must therefore cite to the record and discuss specific evidence therein.  *See Vasquez v. Astrue*, 572 F.3d 586, 591–92, 592 n.1 (9th Cir. 2008); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).  The ALJ may consider a variety of factors in weighing a claimant's credibility, including inconsistencies in a claimant's testimony, his or her reputation for truthfulness, an inadequately explained failure to seek treatment, or a lack of support from the medical evidence.  20 C.F.R. § 404.1529(c); *Orn*, 495 F.3d at 636.  The focus, however, is ultimately upon the reviewing court.  The credibility determination must be "'sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony.'"  *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004) (quoting *Rollins v. Massanari*, 261 F.3d 853, 856–57 (9th Cir. 2001)).

If step four demonstrates that the claimant cannot do the work he or she did in the past, the burden shifts to the Commissioner to establish, in step five, that the claimant can perform jobs available in the national economy.  20 C.F.R. § 404.1560(c).  There, the ALJ must consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can do other work.  *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); *Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007).  The ALJ will typically reference "the grids," under which a finding of disability may be directed, and also consider the testimony of a VE.  *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999).  Where the grids do not direct a finding of disability, the ALJ must identify other jobs that the claimant can perform and which are available in significant numbers in the claimant's region or in several regions of the United States.  42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1560(c).  If the ALJ establishes that the claimant's RFC and transferable skills allow him or her to perform other occupations, the claimant is not disabled.  20 C.F.R. § 404.1566.  Conversely, if the ALJ concludes that the claimant cannot adjust to any other work, he or she is disabled and entitled to benefits.  *Id*. § 404.1520(g).

1

**B.      The ALJ followed the five-step process and concluded that plaintiff was not disabled.**

2

In reviewing plaintiff's claims for benefits, the ALJ followed the five-step process

3 described above.  The ALJ first determined that plaintiff had not engaged in substantial gainful

4 activity since November 4, 2011, the alleged onset date.  (AR 20.)  At step two, the ALJ found

5 that plaintiff's knee disorder, obesity, anxiety, and depression were severe impairments that

6 significantly limited her ability to perform basic-work related functions.  (*Id.*)  The ALJ

7 considered evidence of other complaints and diagnoses, including diabetes mellitus, but found

8 those to be nonsevere.  (*Id.* at 20–21.)  At step three, the ALJ concluded that plaintiff did not have

9 an impairment or combination of impairments that met or medically equaled the severity of any

10 listed impairment.  (*Id.* at 21–22.)

11

The ALJ proceeded to step four and made several findings.  To begin, the ALJ concluded

12 that plaintiff had the RFC to perform a full range of work at all exertional levels, but with the

13 nonexertional limitations.  (*Id.* at 23.)  For example, that she must avoid jobs that require

14 repetitive climbing and must avoid working at unprotected heights or with dangerous machinery.

15 (*Id.*)  The ALJ also found that she is limited to performing simple and some detailed, but

16 uncomplicated tasks, and she may have brief and superficial contact with the general public.  (*Id.*)

17 Next, the ALJ found that plaintiff's impairments could be expected to cause the symptoms

18 alleged, but that her statements regarding the intensity, persistence, and limiting effects of those

19 symptoms were not entirely credible.  (*Id.* at 23–24.)  The ALJ cited several reasons as the basis

20 for the adverse credibility finding, including inconsistency with plaintiff's reported daily

21 activities and recent work activity, plaintiff's receipt of unemployment compensation in 2012,

22 and a lack of support from the medical record.  (*Id.* at 24.)  Finally, based on the evidence in the

23 record and the testimony of the VE, the ALJ concluded that plaintiff was capable of performing

24 her past relevant work as a courtesy cashier, kennel worker, prep cook, and paint sales person.

25 (*Id.* at 26.)

26

A claimant is deemed not disabled at step four if capable of performing past relevant

27 work.  20 C.F.R. § 416.960(b)(3).  Thus, having found that plaintiff could perform her past work,

28 the ALJ held that she was not disabled and denied her claim for benefits.  (AR 28.)

6

**C.     Substantial evidence supports the ALJ's RFC assessment in relation to plaintiff's physical impairments, but not her mental impairments.**

Plaintiff first argues that the ALJ failed to properly evaluate the medical evidence in assessing her RFC, as the evidence demonstrates that she has a more restrictive RFC than determined by the ALJ.  (ECF No. 12 at 6–9.)  Plaintiff's arguments relating to her physical and mental impairments will be discussed in turn.

**1.     Physical Impairments**

Plaintiff first discusses her physical impairments and argues that "[t]he ALJ found no evidence of record to support any limitation in standing, walking and lifting despite the fact that she found [plaintiff's] knee disorder and obesity to be severe impairments."  (*Id.* at 6.) Specifically, plaintiff contends that treatment notes related to plaintiff's knee disorder support limitations in standing, walking, and lifting, but that the ALJ failed to adequately evaluate plaintiff's obesity in assessing her RFC.  (*Id.* at 6–8.)  Defendant argues that the ALJ's RFC assessment does take into account all of plaintiff's limitations and that the record supports the ALJ's reasonable assessment of the evidence.  (ECF No. 16 at 4–5.)

The ALJ expressly recognized that plaintiff's physical impairments would cause work-related limitations, including climbing, working at unprotected heights, or with dangerous machinery.  (AR 23.)  In making the RFC assessment, the ALJ properly analyzed plaintiff's subjective complaints, her doctor's opinions, State agency opinions, the relatively sporadic exhibition of symptoms, plaintiff's effective treatment with medication and physical therapy, and plaintiff's daily activities.  (*Id.* at 23–26.)  Plaintiff does not point to any additional evidence, aside from her subjective opinion, that supports her assertion that the RFC should be more restrictive.  The ALJ did consider limitations such as standing and walking, but found, based on the evidence of the record as a whole, that plaintiff did not have such limitations.  (*See id.*)  Thus, plaintiff does not point to any limitations that the ALJ failed to consider as a result of her interpretation of the evidence.  In the absence of such a showing, the court cannot conclude that the ALJ committed reversible error.  *See Lewis*, 498 F.3d at 911.

### 2.    Mental Impairments

Plaintiff next discusses her mental impairments and argues that the ALJ's finding that plaintiff was "limited to performing simple and some detailed, but complicated tasks[] and [that] she may have brief and superficial contact with the general public" lacked the support of substantial evidence.  (ECF No. 12 at 8–9.)  Specifically, plaintiff raises a challenge to the hypothetical the ALJ posed to the vocational expert.  (*Id.*)  Plaintiff contends that the hypothetical was inadequate, because the ALJ neglected to mention one of the functional limitations identified by the consultative examiner, Dr. Edwards.  (*Id.*)  Defendant again argues that the ALJ's RFC assessment does take into account all of plaintiff's limitations, that the record supports the ALJ's reasonable assessment of the evidence, and any error is harmless.  (ECF No. 16 at 8–11.)

At the fifth step of the sequential analysis, the Commissioner bears the burden of demonstrating that there are significant jobs available in the national economy which the claimant can perform.  20 C.F.R. § 404.1560(c).  The ALJ can meet this burden by asking a vocational expert about a hypothetical individual who has a set of limitations mirroring those of the claimant.  *Hill*, 698 F.3d at 1161.  To be considered reliable, the hypothetical "must include *all* of the claimant's functional limitations, both physical and mental," that are supported by substantial evidence.  *Thomas*, 278 F.3d at 956 (internal quotation omitted) (emphasis added); *Robbins*, 466 F.3d at 886.  Otherwise, the testimony of the vocational expert "has no evidentiary value to support a finding that the claimant can perform jobs in the national economy."  *Hill*, 698 F.3d at 161–62.

Dr. Edwards was of the opinion that plaintiff was: (1) "able to understand, remember, and carry out simply but not complex or detailed instructions," and (2) "able to maintain concentration and attention sufficient to carry out 1- and 2-step tasks and instructions." (AR 447–448.)  The ALJ accorded the opinion "great weight."  (*Id.* at 25.)

At the hearing, the ALJ offered the following hypothetical:

We have a claimant who is 52 on the alleged onset date, educated to the 12th grade with some college, and she indicated about two years. … [] [L]imited as follows. The records do not give a specific limitation. Pursuant to her testimony, I would say that she is not limited in terms of lift, carry, but should avoid jobs that have any kind of repetitive climbing.  Would – should further avoid hazards which

1
2
3
4

> would be working at heights or operating dangerous moving machinery. Now, in terms of the psychological limitation, the CE at 7F gives her simple and some detailed but uncomplicated. And further in terms of her reaction and her relationships, she indicates that she avoids people. So it would limit her to brief and superficial contact with the general public. Now, with those limitations, can we talk about past relevant work?

5
6
7
8
9
10

(AR 59–60.) In addition, plaintiff's attorney further restricted the hypothetical to describe an individual (1) who is only able to withstand a part-time shift, (2) who cannot sit, stand, and walk for a full eight-hour period, and (3) who would be absent two or more times in one month. (*Id.* at 62.) The vocational expert testified that there were jobs available in the national economy for someone with the limitations described by the ALJ, but that an individual who was additionally off-task fifteen percent of the work day may not be able to sustain employment. (*Id.* at 61–62.)

11
12
13
14
15
16
17
18
19

Plaintiff's limitations regarding completing simple tasks are adequately accounted for between the ALJ's initial hypothetical. Noticeably absent, however, is any mention of plaintiff's ability to maintain concentration and attention sufficient to carry out one- or two-step tasks and instructions. The ALJ was not required to adopt all the limitations within Dr. Edwards's assessment, *Magallanes v. Bowen*, 881 F.2d 747, 753–54 (9th Cir. 1989), but she may not disregard parts of it without explaining her reasons for doing so, *see Marsh v. Colvin*, 792 F.3d 1170, 1172–73 (9th Cir. 2015). Dr. Edwards's opinion appears to be supported by the record: the state psychological consultant similarly found plaintiff to be moderately impaired in her ability to maintain concentration, persistence or pace. (AR 78.)

20
21
22
23
24
25
26
27
28

However, defendant argues that any error is harmless because plaintiff proved through her past relevant work that she is capable of more than one- to two-step tasks. (ECF No. 16 at 9.) Specifically, that since April 2013, plaintiff has worked as a prep cook, which is categorized as Reasoning Level 2. (*Id.*) Defendant would like this court to find any error harmless based solely on plaintiff's past relevant work history. However, other evidence in the record, such as the opinions of Dr. Edwards and the State psychological consultant support a finding that plaintiff is limited to one- or two-step tasks. Thus, based on this mixed record, this court "cannot determine whether substantial evidence supports the ALJ's step-five finding that [plaintiff] could perform

1   [the] work." *Massachi v. Astrue,* 486 F.3d 1149, 1154 (9th Cir. 2007).   Therefore, the ALJ's

2   failure to reconcile the apparent conflict is not harmless.

3        In sum, the hypothetical questions posed by the ALJ and plaintiff's counsel failed to

4   account for all of plaintiff's limitations.   In such circumstances, the law is clear that the

5   vocational expert's testimony cannot constitute substantial evidence to support the ALJ's finding

6   of no disability.  *Gallant*, 753 F.2d at 1456.

7   **D.    The ALJ permissibly discounted plaintiff's subjective testimony.**

8        Finally, plaintiff argues that the ALJ erred in failing to properly evaluate her subjective

9   complaints.  (ECF No. 12 at 10–13.)   The ALJ articulated five main reasons for discounting

10  plaintiff's subjective complaints.  (*See* AR 20–26).  Plaintiff disagreed with the ALJ's analysis of

11  the following: (1) the extent of plaintiff's daily activities; (2) her receipt of unemployment

12  benefits; (3) the conservative nature of her treatment; and (4) that the objective evidence in the

13  record did not support plaintiff's complaints.  (ECF No. 12 at 10.)  The court considers each in

14  turn.

15       First, plaintiff's daily activities are a clear and convincing reason to find plaintiff less

16  credible.  The Ninth Circuit has warned ALJs to "be especially cautious in concluding that daily

17  activities are inconsistent with testimony about pain, because impairments that would

18  unquestionably preclude work and all the pressures of a workplace environment will often be

19  consistent with doing more than merely resting in bed all day."  *Garrison*, 759 F.3d at 1016.

20  Still, a claimant's daily activities may support an adverse credibility finding where the activities

21  contradict his or her testimony, as they do here.  *Orn*, 495 F.3d at 639.  Plaintiff reported and

22  testified that she can perform self-care, use a computer, perform household chores, prepare meals,

23  drive, care for her pets, and travel.  (AR at 43–63, 247–251.)  Further, plaintiff testified to that she

24  is able to work up to twenty-five hours per week at her part-time job.  (*Id.* at 43–63.)  The ALJ

25  reasonably found that plaintiff's activities were inconsistent with the impairments alleged, and

26  thus that her allegations were not fully credible.  (*Id.* at 21–22.)

27       Second, the ALJ found that plaintiff's receipt of unemployment compensation, while not

28  dispositive, was inconsistent with a claim for disability.  (*Id.* at 24.)  Plaintiff asserts that the ALJ

improperly based part of her credibility determination on plaintiff's receipt of unemployment benefits because the ALJ pointed to no evidence that plaintiff held herself out as available to work full-time.  (ECF No. 12 at 11–12.)  The record here does not establish whether plaintiff held herself out as available for full-time work; thus, such basis is not supported by substantial evidence.  *See Carmickle v. Commissioner*, 533 F.3d 115, 1161–62 (9th Cir. 2008).  Nevertheless, because the ALJ presented alternative bases for discounting the claimant's testimony, any reliance on the claimant's receipt of unemployment benefits was, if erroneous, harmless.  *Batson v. Comm'r of Soc. Sec. Admin*, 359 F.3d 1190, 1197 (9th Cir. 2004) (finding harmless error where the record did not support one of the ALJ's several reasons for an adverse credibility finding)).

Third, the ALJ permissibly cited the conservative nature of plaintiff's treatment.  Plaintiff challenges the ALJ's rationale on the basis that she failed to cite "what other aggressive treatment she must have in order to credit her subjective complaints. Moreover, the ALJ cannot fault [Plaintiff] for failing to pursue non-conservative treatment options if none exist."  (ECF No. 12 at 12.)

Plaintiff's argument misstates the facts and misconstrues the ALJ's decision.  The ALJ discussed the pain-management focus of plaintiff's treatment not to suggest that plaintiff should have sought out more aggressive treatment options, but rather to infer that because plaintiff's impairments were managed by "routine, conservative, and non-emergency treatment," her allegations of disabling pain were less credible.  (AR 24, 26.)  The Ninth Circuit has observed that "although a conservative course of treatment can undermine allegations of debilitating pain, such fact is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment."  *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).  However, the *Carmickle* court qualified this nuance by explaining that the record in that case demonstrated the unavailability of more aggressive treatment options.  *Id.*  Otherwise, the Ninth Circuit has typically deemed conservative treatment with pain medication to be a legally sufficient reason for discounting credibility, as is a discrepancy between the frequency of treatment and the level of pain alleged.  *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007); *Molina*, 674 F.3d at 1113–14; *Tommasetti*, 533 F.3d at

1039 (deeming permissible the ALJ's inference that the claimant's favorable response to conservative treatment undermined his allegations of disabling pain). In this case, the ALJ cited exactly these reasons (*see* AR 21–26), and the record supports this determination (*see, e.g.*, *id.* at 462) (showing that plaintiff's doctor decreased plaintiff's medications and that she saw her doctor once a month). The determination is free of error.

Finally, the ALJ's citation to the lack of strong support provided by the objective medical evidence is a "clear and convincing" reason for discrediting plaintiff's testimony. Plaintiff contends that the ALJ erred by discrediting her testimony based solely on an alleged lack of medical evidence. (ECF No. 12 at 13.)

Plaintiff's argument falls flat. The ALJ did not state that no objective medical evidence supported plaintiff's allegations of pain, but rather, that the record did not strongly support a finding of *disabling* pain. Based on the totality of the medical evidence, the ALJ concluded that the evidence provided an insufficient basis to find disability. The ALJ supported her determination by pointing to the findings of plaintiff's treating physician, the consultative examiner, and the state agency consultant. (AR 23–26.) The ALJ also discussed clinical findings from medical exams noting no acute distress, that she was able to walk normally, that she had normal strength in all of her extremities, her spine had normal, pain-free range of motion, and that she was oriented to time, place, and person. (*Id.* at 452–453, 460–461, 485.) The ALJ's conclusion that the objective medical evidence did not strongly support plaintiff's allegations is therefore supported by substantial evidence in the record. Although a lack of objective medical evidence cannot be the sole basis for discounting credibility, the ALJ may properly consider it among other factors. *Burch*, 400 F.3d at 681.

### E.      The record warrants remand for further proceedings.

A district court has the discretion to remand for an immediate award for benefits where all three prongs of the credit-as-true test are met. *Garrison*, 759 F.3d at 1020. Under that test, (1) the record must be fully developed, such that further administrative proceedings would serve no purpose; (2) the ALJ must have failed to articulate legally sufficient reasons for rejecting medical opinion evidence or claimant's testimony; and (3) if on remand the rejected evidence were

credited as true, the ALJ would be required to find the claimant disabled.  *Id.*  Even in the "rare circumstances" where the test is satisfied, a court may find that remand for further proceedings is appropriate.  *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014).

As noted above, the ALJ failed to address the entirety of Dr. Edwards's medical opinion, and failed to properly consider all the limitations contained therein when questioning the vocational expert.  Nevertheless, the record raises substantial doubts as to whether plaintiff is disabled.  Because there are outstanding issues that must be resolved before a final disability determination can be made, it is appropriate to remand this case for further proceedings. *Treichler*, 775 F.3d at 1105.

## IV.   CONCLUSION

The ALJ did not err in her assessment of plaintiff's physical impairments or plaintiff's credibility.  For the foregoing reasons, however, the court concludes that the ALJ's failure to discuss each of the functional limitations identified by Dr. Edwards led to legal error at step five. The court recommends that plaintiff's motion for remand (ECF No. 12) be granted and that defendant's cross-motion to affirm (ECF No. 16) be denied.

1.     Pursuant to 28 U.S.C. § 636(b)(1)(c) and Local Rule IB 3-2, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.     This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

1

## V.    RECOMMENDATION

2      **IT IS THEREFORE RECOMMENDED** that plaintiff's motion for remand or reversal

3  (ECF No. 12) be **GRANTED** and defendant's cross-motion to affirm (ECF No. 16) be **DENIED**;

4      **IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** and close

5  this case.

6      **DATED**: January 4, 2017.

7  _____

8  **UNITED STATES MAGISTRATE JUDGE**

14